UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA J. HUFFMAN, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) 08 C 3679 ) |
| MQ CONSTRUCTION COMPANY, and MICHAEL A. QUARANTA individually, and as agent for MQ CONSTRUCTION COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants MQ Construction Company ("MQ") and Michael Quaranta ("Quaranta") to dismiss Counts II, III, and IV of Linda Huffman ("Huffman")'s complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

On June 27, 2008, Huffman filed the present four-count complaint. According to the allegations contained in the complaint, which we must accept as true for the

purposes of this motion, MQ[1] employed Huffman as a bookkeeper from February 1989 until November 2007. During this time, Quaranta allegedly made lewd, sexually explicit comments to Huffman; these comments intensified during 2006 and 2007. Huffman alleges that during 2006 and 2007, Quaranta touched her in a sexually explicit manner, which included rubbing her, touching her breasts, and reaching under her skirt. Quaranta's sexual advances intimidated Huffman and adversely affected her job performance. Despite Huffman's repeated complaints to Quaranta and others at MQ that Quaranta stop, he continued behavior of this kind. Huffman claims that Quaranta's actions and MQ's indifference to such activity caused her to quit her job at MQ.

Huffman filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC terminated its investigation on the basis that it could not complete administrative processing within 180 days and issued Huffman a right-to-sue letter. Huffman asserts that we have original jurisdiction over Count I (sexual discrimination) pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. She also alleges we have supplemental jurisdiction over her pendant state tort claims consisting of retaliatory discharge, battery, and intentional infliction of emotional distress ("IIED"). In response to Huffman's complaint, MQ and Quaranta filed the

---

[1]Quaranta owns MQ Construction Company. (Compl. ¶ 6)

instant motion to dismiss Counts II, III, and IV of Huffman's complaint under Rules 12(b)(1) and 12(b)(6).

**LEGAL STANDARDS**

## I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dept of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff must support his allegations with competent proof of jurisdictional facts. *Thomson v. Gaskillwsa*, 315 U.S. 442, 446, 62 S. Ct. 673, 675 (1942). In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1209, 1210 (7th Cir. 1996).

## II. Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe

all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ---, 127 S. Ct. 1955, 1965 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Lukes Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). Claims should not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hefferman v. Bass*, 467 F.3d. 596, 598 (7th Cir. 2006), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). With these principles in mind, we turn to Defendants' instant motion.

## DISCUSSION

### I. Counts III and IV – Lack of Subject Matter Jurisdiction

MQ and Quaranta assert that Huffman's pendant state law tort claims consisting of battery and IIED are preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111. The IHRA is the exclusive remedy for redress of civil rights violations under Illinois law. 775 ILCS 5/8-111(D). Whether a court may exercise jurisdiction over a tort claim depends upon whether the tort claim is "inextricably linked" to a civil

rights violation and there exists no independent basis for the action apart from the Act itself. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). At issue is whether Huffman's battery and IIED claims are inextricably linked to her sexual harassment claim.

Huffman opposes the instant motion with respect to her battery claim, contending that she establishes an independent basis apart from the IHRA. The Illinois Supreme Court held in *Maksimovic* that a common law tort claim is not "inextricably linked" with a civil rights violation when a plaintiff establishes the elements of a tort independent of the legal duties created under the IHRA. *Id.* at 24. The plaintiff in *Maksimovic* alleged sexual harassment, assault, battery, and false imprisonment. *Id.* at 22. Her battery count asserted that the defendant placed his hand under her skirt and touched her legs, grabbed her buttocks, and touched her while trying to kiss her. *Id.* The court declined to apply the doctrine of preemption to any of the intentional tort claims, including battery. It reasoned that the plaintiff established an independent basis for imposing liability because the common law tort claims did not fall into any category of duties contemplated by the IHRA. *Id.* at 24.

Like the plaintiff in *Maksimovic*, Huffman realleges paragraphs 1-15 in Count I (sexual harassment) of her complaint in support of her battery claim. In doing so, she alleges that Quaranta rubbed her, touched her breasts, and reached under her skirt without her consent. The distinction between those claims that are preempted and

claims that are not preempted turns on the legal duty the defendant allegedly breached. *Id.* at 23. The IHRA imposes a duty on employers to refrain from sexually harassing employees. 775 ILCS 5/2-102(D). It also establishes a duty to prevent sexual advances that "interfere with an individual's work performance." 775 ILCS 5/2-101(E). The IHRA, however, will not preempt a state law claim if the defendant's conduct would be actionable aside from its character as a civil rights violation. *Maksimovic*, at 23. A person has a duty to refrain from touching another person without that person's consent. *Pechan v. DynaPro, Inc.*, 622 N.E.2d 108, 117 (Ill. 1993). A breach of that duty constitutes an actionable battery. Like the plaintiff in *Maksimovic*, Huffman alleges that Quaranta touched her breasts and reached under her skirt. The allegations contained in Huffman's complaint are sufficient to establish the type of physical contact that constitutes a battery. Further, the battery is actionable aside from the duties employers owe their employees, which are contemplated by the IHRA. Therefore, Count III of Huffman's complaint is not preempted by the IHRA and we maintain subject matter jurisdiction over the claim.

We employ the same reasoning with regard to Huffman's IIED claim. Here again, defendants seek dismissal of Count IV of Huffman's complaint on the basis that the IIED claim is solely related to Quaranta's alleged sexual advances which is a duty accounted for under the IHRA. A plaintiff must establish the following elements to maintain an IIED claim under Illinois law: (1) the defendant's conduct was extreme and

outrageous, (2) the defendant intended to inflict severe emotional distress, (3) defendant's conduct did cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Huffman bases her IIED claim around the lewd, sexually explicit comments Quaranta made to her in his office on a regular basis. Preemption extends to claims of intentional infliction of emotional distress that depend on the allegations of sexual harassment. *Geise v. Phoenix Co. Of Chicago*, 639 N.E.2d 1273, 1276-78 (Ill. 1994). She further avers that the verbal and physical nature of the sexual harassment intimidated her. Huffman's IIED claim is supported by factual assertions identical to the duty an employer owes an employee as addressed in IHRA. Simply put, the IHRA imposes a duty onto an employer to refrain from sexually harassing employees and Huffman's IIED claim uses Quaranta's sexually explicit acts in alleging extreme and outrageous conduct. If there were no claim of sexual harassment, then Huffman would not have an actionable claim for IIED. We find Quaranta's comments as well as his conduct not actionable aside from the character of the sexual harassment claim. *Maksimovic*, at 23. Therefore, Count IV of Huffman's complaint is preempted by the IHRA and is dismissed for lack of subject matter jurisdiction.

## II. Count II – Failure to State a Claim

MQ and Quaranta contest Huffman's retaliatory discharge claim on the ground that she was never actually discharged and, therefore, fails to state a claim under Rule 12(b)(6). Huffman does not oppose this portion of defendants' motion and instead

requests leave to file an amended complaint. Illinois law holds that a valid claim for retaliatory discharge includes the following: (1) plaintiff was discharged from employment; (2) in retaliation for his or her activities; and (3) that the discharge violates a clearly mandated public policy. *Engstrom v. Provena Hosps.*, 819 N.E.2d 778, 781 (Ill. App. Ct. 2004). Huffman does not allege that MQ terminated her. Rather, she claims that "she was treated in a manner that forced her resignation." (Compl. ¶ 19). The Illinois Supreme Court declined to expand "constructive discharge" to retaliatory discharge claims. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992). Voluntary resignation is not the same as being terminated for purposes of retaliatory discharge. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 864 (Ill. App. Ct. 2000). As such, MQ's motion is granted with respect to Count II as Huffman fails to state a cognizable claim.

## CONCLUSION

Based on the foregoing, MQ and Quaranta's motion to dismiss is granted with respect to Counts II and IV but is denied as to Count III.

_____
Charles P. Kocoras
United States District Judge

Dated: OCT 1 5 2008