UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LINDA J. HUFFMAN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 08 C 3679 |
| | ) | |
| MQ CONSTRUCTION COMPANY, | ) | |
| and MICHAEL A. QUARANTA, | ) | |
| individually and as agent for | ) | |
| MQ CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants MQ Construction Company and Michael Quaranta ("Defendants") for partial summary judgment. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Linda Huffman ("Huffman") first began working as a secretary for MQ Construction Company ("MQ") in February 1989. MQ is owned by Michael Quaranta ("Quaranta"), who served as secretary-treasurer and Huffman's direct supervisor. As secretary for MQ, Huffman worked closely with Quaranta in MQ's offices. Huffman continued to work for MQ until November 2005 when she left to pursue a job apart from the construction business. After working nearly a year for a beauty products

company, Huffman returned to MQ in October 2006 with the same compensation level and job responsibilities as she enjoyed during her previous term of employment.

Quaranta's behavior toward Huffman became increasingly sexualized upon Huffman's return to MQ. Quaranta explicitly requested that Huffman engage in oral sex more than twenty times. Quaranta also told Huffman that if she refused his advances she would never work for another construction company. Huffman nevertheless declined Quaranta's advances and asked him "what's wrong with you?" and "why are you acting this way?" Quaranta also rubbed Huffman's shoulders and then tried to reach into her bra on several occasions; each time Huffman told him to stop. In fall 2007 Quaranta attempted to lift up Huffman's skirt. He also told Huffman that "he could be the rabbit and [Huffman] could be the carrot". Though Huffman found Quaranta's behavior upsetting, she testified that it did not affect her ability to do her job.

Huffman complained about Quaranta's behavior to MQ's attorney, Bruce Jackson, and a co-worker at MQ, Joseph Guerra. Huffman quit her job at MQ in November 2007. On her last day, Huffman told Quaranta and MQ's president, Vito Quaranta, that her departure was the result of Quaranta's conduct.

On June 27, 2008, Huffman filed suit against MQ and Quaranta alleging employment discrimination under Title VII as well as state law claims for retaliatory discharge, battery, and intentional infliction of emotional distress. We dismissed the

retaliatory discharge and intentional infliction of emotional distress claims on October 15, 2008. Defendants now move for partial summary judgment as to the Title VII claim.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

With these principles in mind, we turn to Defendants' motion.

## DISCUSSION

Title VII prohibits discrimination with respect to an individual's "terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42

U.S.C. § 2000e-2(a)(2). Plaintiffs may establish a Title VII violation by showing their employer required them to work in a hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To prevail on her hostile work environment claim, Huffman must show: (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002). Defendants' motion only addresses the hostile work environment requirement, so we will limit our discussion to that element.

To satisfy the hostile work environment element, Huffman must demonstrate she suffered from sexual harassment severe or pervasive enough to create "an environment that a reasonable person would find hostile or abusive[.]" *Harris*, 510 U.S. at 21. When assessing whether a work environment could be objectively described as hostile, courts look to a number of factors, including, but not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. In analyzing whether a situation is objectively hostile, courts distinguish "uninvited sexual solicitations [and] obscene language or

gestures" that would render an environment objectively hostile from "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" that would not give rise to Title VII liability. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000).

Defendants contend that no reasonable jury could find that Huffman worked in an objectively hostile environment. Huffman testified that Quaranta propositioned her for oral sex on more than twenty occasions while the two worked closely together at MQ's offices. Moreover, he made these unwanted advances while exercising supervisory authority over her. Quaranta did not engage in mere "vulgar banter, tinged with sexual innuendo" but rather made several unwanted solicitations using sexually explicit language. *Hostetler*, 218 F.3d at 807. This conduct is severe enough to create a triable issue regarding whether Huffman worked in an objectively hostile environment. *See Quantock*, 312 F.3d at 904(finding triable issue based solely on fact that the defendant "made repeated requests for sex directly to [plaintiff,]" enjoyed a position of authority over plaintiff, and worked in close quarters with her).

Defendants point to another part of Huffman's testimony as evidence that no reasonable juror could conclude she worked in an objectively hostile setting. Huffman stated that Quaranta's behavior did not affect her ability to do her job at MQ, though it did upset her. Defendants highlight this statement to suggest that because Huffman's

work performance did not suffer a reasonable person in her position would not feel that her environment was actionably hostile. But the proper inquiry "is not whether work has been impaired" but whether a reasonable juror could conclude that Huffman's work conditions were discriminatorily altered. *Harris*, 510 U.S. at 24 (Scalia, J., concurring). "The absence of a noticeable decline in job productivity should therefore not be unduly emphasized where there is ample evidence showing that a campaign of harassment had an impact on its target and made it more difficult for her to do her job." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1455 (7th Cir. 1994). A reasonable juror could find that Defendants' conduct affected Huffman and made the completion of her responsibilities more arduous even though she was still able to do her job. Huffman testified that Quaranta's conduct upset her and that she ultimately left MQ because of his conduct. The portion of Huffman's testimony upon which Defendants rely should not be viewed in isolation; other parts of her testimony regarding Quaranta's conduct would, if believed, be sufficient for a reasonable juror to find Defendants subjected Huffman to an objectively hostile work environment..

Viewing the facts in a light most favorable to Huffman, therefore, we hold that Defendants have not demonstrated that they are entitled to judgment as a matter of law on Huffman's Title VII claim.

## CONCLUSION

For the foregoing reasons, we deny Defendants' motion for partial summary judgment.

_____
Charles P. Kocoras
United States District Judge

Dated:  November 12, 2009